IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| JOANNA M. AUSTIN,<br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF THE<br>SOCIAL SECURITY ADMINISTRATION,<br>Defendant. | No. 7:11-CV-00097-O (BF) |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

This is an appeal from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying the claim of Joanna M. Austin ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the "Act"). The Court considered Plaintiff's Brief, filed on November 10, 2011, Defendant's Brief, filed on December 9, 2011, and Plaintiff's Reply Brief, filed on December 12, 2011. The Court reviewed the record in connection with the pleadings. For the following reasons, the Court recommends that the District Court AFFIRM the final decision of the Commissioner.

### Background[1]

**Procedural History**

On June 25, 2007, Plaintiff filed her applications for DIB and SSI alleging disability beginning February 28, 2007 because of breast cancer and bipolar disorder. (Tr. 127-33, 168.) Plaintiff's application was denied initially and again upon reconsideration, and thus Plaintiff timely requested a hearing. (Tr. 71-75, 80-85, 88-91.) A hearing was held on March 18, 2009 before an administrative

---

[1] The following background facts are taken from the transcript of the administrative proceedings, which is designated as "Tr."

law judge ("ALJ"), whereby Plaintiff, represented by counsel, and a vocational expert ("VE") appeared and testified. (Tr. 33-70.) Additionally, a medical expert ("ME") appeared by telephone. (*Id.*) On April 12, 2010, the ALJ issued an unfavorable decision finding Plaintiff not disabled within the meaning of the Act. (Tr. 17-27.) Plaintiff requested review to the Appeals Council, but that request was denied on June 16, 2011. (Tr. 1-3.) Thus, the ALJ's decision became the final decision of the Commissioner, from which Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

**Plaintiff's Age, Education, and Work Experience**

Plaintiff was born on January 3, 1958, making her 49 years old at the time of filing for DIB and SSI benefits. (Tr. 127.) Plaintiff graduated from high school and attended college for approximately two years. (Tr. 37, 174.) According to the VE who testified at the hearing, Plaintiff's past work experience included the jobs of a fast food worker, dining room attendant, cafeteria counter attendant, and a stocker. (Tr. 63.) The ALJ noted in his Findings that Plaintiff was working part-time at Wal-Mart after her alleged onset date of disability, but such work did not constitute substantial gainful activity. (Tr. 20.)

**Plaintiff's Relevant Medical Evidence[2]**

Plaintiff began mental health treatment at the Helen Farabee Regional MHMR Centers ("MHMR") in September of 2005. (Tr. 534-36.) She was diagnosed with bipolar I disorder, most recent episode manic, in full remission, and alcohol dependence, in sustained remission. (Tr. 535.)

---

[2] The Court notes that in Plaintiff's Brief, Plaintiff indicates that the relevant medical evidence only consists of the hearing testimony of the ME and the mental residual functional capacity ("RFC") assessment conducted by the state agency psychological consultant, Dr. Charles McDonald. (Pl.'s Br. at 2.) Because Plaintiff does not contest the ALJ's findings on her physical impairments, this Court will likewise limit its discussion to the relevant medical evidence which consists of Plaintiff's mental impairments.

2

Plaintiff returned to MHMR on February 16, 2006. (Tr. 366-67.) She was prescribed Trazodone, Lithobid, and Effexor XR, and the doctor discontinued her use of Lexapro. (Tr. 366.) On April 11, 2007, Plaintiff presented to MHMR and the psychiatrist rated her overall level of functioning as an eight on a scale of zero to ten, with zero being low and ten being high. (Tr. 357.) Plaintiff rated her symptom severity and side effects as a zero, indicating no symptoms. (*Id.*) The psychiatrist noted that Plaintiff was doing extremely well on her medication, her mood was stable, she slept well, her appetite was good, and she did not have any thoughts of suicide or homicide. (Tr. 358.) On June 29, 2007, Plaintiff reported to MHMR due to panic attacks. (Tr. 355-56.) The doctor made a notation that Plaintiff was going through chemotherapy and he assured her that her anxiety was due to the chemotherapy. (Tr. 356.)

In February of 2008, Plaintiff reported to MHMR in a good mood and stated that she was back to work. (Tr. 537.) It was noted that she was making good progress and she was not expressing any problematic symptoms with sleeping, eating, or socializing. (*Id.*) In fact, Plaintiff informed the qualified mental health professional that she was not experiencing any symptoms of bipolar disorder. (*Id.*) On May 15, 2008, Plaintiff presented to MHMR for a follow-up visit. (Tr. 539-40.) She reported her symptom severity as a one on a scale of zero to ten, with zero being no symptoms, five being moderate symptoms, and ten equaling extreme symptoms. (Tr. 539.) The psychiatrist rated her overall functioning as a seven on a scale of zero to ten, with zero being low and ten being high. (*Id.*) The psychiatrist noted that Plaintiff was working and sometimes became anxious, but otherwise she was doing well and feeling much better. (Tr. 540.) On June 26, 2008, Plaintiff visited MHMR because she lost her job and her grandchild in the two previous weeks. (Tr. 544.) Plaintiff reported two bipolar episodes and the qualified mental health professional noted that Plaintiff was exhibiting problematic

symptoms of bipolar disorder and her progress was poor. (*Id.*) On June 9, 2008, slightly more than two weeks before that visit, Plaintiff's overall functioning level was at a seven on the zero to ten scale, and she rated her symptom severity at a three, indicating less than moderate symptoms. (Tr. 545.) In October of 2008, Plaintiff reported to MHMR that she was doing much better and she rated her symptom severity as a one, with zero being no symptoms and five being moderate symptoms. (Tr. 550.) Plaintiff denied mood swings, depression, hearing voices, or suicidal or homicidal ideation. (Tr. 551.) Plaintiff continued treatment through January of 2009.

At the request of the Commissioner, Plaintiff had a consultative psychological examination with Dr. Leon Morris on August 30, 2007. (Tr. 368-75.) The doctor noted that Plaintiff drove herself to the examination, was on time, and appeared appropriately dressed and groomed. (Tr. 368.) Plaintiff denied any problems with depression, sleep, appetite, or visual hallucinations. (Tr. 369.) She did report experiencing low energy levels and problems with her memory and concentration. (*Id.*) Plaintiff described her history of alcohol and cannibas use, but stated she attends Alcoholics Anonymous ("AA") meetings and hasn't used alcohol or drugs in four years. (*Id.*) Plaintiff told the doctor that she lives by herself and she is able to bathe, dress, and groom herself. (Tr. 370.) Additionally, she is able to perform household chores such as cooking, cleaning, laundry, and shopping. (*Id.*) She has a driver's license and is able to drive herself around, as well as handle her own financial affairs. (*Id.*) Plaintiff indicated that her hobbies are arts and crafts and she visits with her friends on a daily basis. (*Id.*) The doctor described Plaintiff's intelligence as average and noted that her concentration ability appeared to be good. (Tr. 372.) He explained that she "had no difficulty performing serial seven subtractions, adding change, and spelling the word "world" forward and backward." (*Id.*) Dr. Morris diagnosed Plaintiff with bipolar disorder, not otherwise specified;

nicotine dependence; noncompliance with smoking treatment; alcohol dependence in sustained full remission; cannabis dependence in sustained full remission; and personality disorder, not otherwise specified. (Tr. 373.) Plaintiff was assigned a GAF score of 70.[3]

At the request of the Commissioner, a state agency psychological consultant, Dr. Charles McDonald, performed a Psychiatric Review Technique of Plaintiff on September 18, 2007. (Tr. 384-97.) In the Psychiatric Review Technique, Dr. McDonald diagnosed Plaintiff with 12.04 affective disorders, bipolar disorder. (Tr. 384-87.) Regarding Plaintiff's functional limitations, the doctor indicated Plaintiff had no restrictions in activities of daily living; moderate difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence, or pace; and one or two episodes of decompensation. (Tr. 394.) In the doctor's notes, he indicated that Plaintiff's functioning was fairly high since she became sober and was taking her medications, and that she was able to attend appointments and keep up with her medications. (Tr. 396.) He noted that Plaintiff reported that she was able to clean her home, manage money, use the telephone directory, drive herself around, and dress and groom herself. (*Id.*) Regarding her concentration, the doctor noted that Plaintiff appeared alert and well-oriented and her memory and concentration were good. (*Id.*) He noted her intelligence and knowledge as average. (*Id.*)

Dr. McDonald also completed a Mental RFC Assessment of Plaintiff. (Tr. 398-401.) He found Plaintiff not significantly limited in all the sections regarding her understanding and memory. (Tr. 398.) Additionally, the doctor found her not significantly limited in all but two of the sections

---

[3] A GAF score represents a clinician's judgment of an individual's overall level of functioning. *See* AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. text rev. 2000) (DSM). A GAF score of 61-70 indicates some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships. *See id.*

regarding her sustained concentration and persistence. (Tr. 398-99.) The two areas where he found her moderately limited are the ability to work in connection with or proximity to others without being distracted by them, and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (*Id.*) Dr. Morris also found Plaintiff not significantly limited in her ability to interact appropriately with the general public, her ability to ask simple questions or request assistance, her ability to be aware of normal hazards and take appropriate precautions, and her ability to travel in unfamiliar places or use public transportation. (Tr. 399.) He found Plaintiff moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors, her ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes, her ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, her ability to respond appropriately to changes in the work setting, and her ability to set realistic goals or make plans independently of others. (*Id.*) In the functional capacity assessment, the doctor indicated that Plaintiff "can understand, remember, and carry out detailed but not complex instructions, make decisions, attend and concentrate for extended periods, accept instructions and respond appropriately to change in routine work settings." (Tr. 400.)

**Plaintiff's Testimony at the Hearing**

Plaintiff, represented by counsel, testified on her own behalf at the hearing held on March 18, 2009. (Tr. 33-70.) She testified that she lives alone in an apartment and she does her own cleaning, cooking, and laundry. (Tr. 36, 40.) She stated that she has a driver's license and is able to drive and do her own grocery shopping. (Tr. 40-41.) She testified that she drives once or twice a day to go shopping or visit with a friend. (Tr. 41.) She stated that she has a grandchild who is

five years old and sometimes she watches him. (*Id.*) Plaintiff said she knows how to use a computer, she reads books and magazines, and she attends AA meetings. (Tr. 42.)

Plaintiff testified that she does pretty well with being around other people as long as she can remove herself from a situation if she feels like she is going to have an emotional struggle. (Tr. 51.) She stated that her cancer medication has made her bipolar worse. (Tr. 51-52.) Plaintiff said that she writes down important things to remember them and she can't handle stressful situations very well, but she is okay as long as she can work at her own pace. (Tr. 53-54.)

**The Hearing**

An ME, Dr. Thomas Lynn, appeared by telephone and testified at the hearing. He testified that he has not treated or examined Plaintiff, but he has reviewed all of the medical records. (Tr. 55.) He stated that the medical records indicate Plaintiff has breast cancer, bipolar I disorder, alcohol and cannabis dependence in full sustained remission, and edentulousness. (Tr. 55-56.) The ME said that he did not feel that any of these impairments met or equaled any listed impairment. (Tr. 56.) He formulated the following RFC for a hypothetical person of Plaintiff's age and with Plaintiff's medical impairments: lift and carry twenty pounds occasionally and ten pounds frequently; sit for eight out of eight hours with normal break periods; stand and walk for a period of two hours or for six hours out of an eight-hour workday; occasionally bend, stoop, squat, crouch, push-pull and balance; frequently reach and finger; generally unlimited dexterity; and unlimited ability to communicate, but with limited interaction with the public. (Tr. 56, 58.) When asked on cross-examination whether Plaintiff might have trouble handling a production pace for work, the ME replied "[i]f, if, if the work was a demanding kind of work where she had to get out so many units per hour so to speak, I think she would find that very stressful." (Tr. 60.) He then

stated that an employer might be a little more lenient on her if she was going through radiation or chemotherapy treatment. (*Id.*)

A VE, Clifton King, Jr., also testified at the hearing regarding jobs in the national economy. He stated that Plaintiff has past relevant work as a fast-food worker, dining room attendant, cafeteria counter attendant, cashier checker, and a stocker. (Tr. 63.) The ALJ posed a hypothetical to the VE: assume someone who can occasionally lift and carry, or push and pull, twenty pounds; frequently lift and carry, or push and pull, ten pounds; cannot use hand controls due to limited pushing and pulling; stand and walk for six hours in an eight-hour workday with normal breaks; sit as the job requires; occasionally stoop, crouch, bend, climb, kneel, and crawl; and cannot interact with the general public. (*Id.*) He asked the VE if that hypothetical person, with the same age, education, and experience as Plaintiff, would be able to perform any of Plaintiff's past relevant work. (*Id.*) The VE indicated that hypothetical person would not. (*Id.*) The ALJ then asked if the hypothetical person could perform any other jobs in the national economy. (*Id.*) The VE identified the following representative occupations: "cafeteria attendant, light, unskilled, SVP: 2" DOT[4] #311.677-010; "labeler-marker, light, unskilled, SVP: 2" DOT #920.687-016; and "final assembler optical goods, sedentary, unskilled, SVP: 2" DOT #713.687-018. (Tr. 64.)

Upon cross-examination, Plaintiff's counsel asked the VE to add the limitation that the hypothetical person had an impaired ability to complete normal workdays and workweeks without interruptions from psychological symptoms and had an impaired ability to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 66.) The VE responded that

---

[4] The Dictionary of Occupational Titles ("DOT") is a standardized volume of job definitions that the Social Security Administration relies on at steps 4 and 5 of its five-step disability determination process. SSR 00-4p, 2000 WL 1898704 at *2.

the maintenance of jobs would be affected, but not necessarily the performance. (*Id.*) Plaintiff's counsel asked the VE if any of the jobs required maintenance of a certain pace because of a set amount of work that had to be done. (Tr. 66-67.) The VE stated no, but that the sedentary position would be more of a production-based position, whereas the other two are jobs that are completed. (Tr. 67.) The VE agreed with Plaintiff's counsel that if a person cannot complete a workday and workweek that would be a problem in all of the positions because if a person isn't at work then they can't complete any tasks. (*Id.*) The VE testified that his testimony did not conflict with the provisions in the DOT. (Tr. 65.)

**The Decision**

The ALJ analyzed Plaintiff's claim pursuant to the familiar five-step sequential evaluation process.[5] At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of February 28, 2007. (Tr. 20.) At step two, the ALJ found that the medical evidence established that Plaintiff had the following severe impairments: carcinoma of the right breast with lumpectomy, chemotherapy, and radiation; bipolar disorder I; valvular regurgitation; a personality disorder not otherwise specified; and alcoholism and marijuana abuse, in remission. (*Id.*) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 21-23.)

---

[5] (1) Is the claimant currently working? (2) Does she have a severe impairment? (3) Does the impairment meet or equal an impairment listed in Appendix 1? (4) Does the impairment prevent her from performing her past relevant work? (5) Does the impairment prevent her from doing any other work? 20 C.F.R. §§ 404.1520, 416.920.

Before proceeding to step four, the ALJ assessed Plaintiff's RFC. He determined that she could perform a range of light work[6] in that she could occasionally lift and carry, or push and pull, twenty pounds; frequently lift and carry, or push and pull, ten pounds; stand and walk for six hours in an eight-hour workday; sit as the job requires; occasionally stoop, crouch, bend, climb, kneel, and crawl; and cannot interact with the general public. (Tr. 23.)

At step four, the ALJ determined that Plaintiff could not perform her past relevant work as a fast food worker, dining room attendant, cafeteria counter attendant, cashier/checker, or a stocker. (Tr. 25.) At step five, the ALJ found, based on the testimony of the VE, that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 26-27.) Specifically, the ALJ found that Plaintiff could perform the positions of a cafeteria attendant, a marker II/labeler, and a final assembler of optical goods. (*Id.*) Hence, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act from her alleged onset date through the date of the ALJ's decision. (Tr. 27.)

## **Standard of Review**

To be entitled to social security benefits, a plaintiff must prove that she is disabled for purposes of the Social Security Act. *Leggett v. Chater*, 67 F.3d 558, 563–64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any

---

[6] Light work is defined as work that involves lifting no more than twenty pounds at a time with frequent lifting or carrying up to ten pounds. Even though the weight lifted may be very little, a job in this category requires a good deal of walking or standing, or it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full range of light work, an individual must have the ability to do substantially all of these abilities. 20 C.F.R. § 416.967.

medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled. Those steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work the individual has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the inquiry, the burden lies with the claimant to prove her disability. *Leggett*, 67 F.3d at 564. The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations, by expert

vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

The Commissioner's determination is afforded great deference. *Leggett*, 67 F.3d at 564. Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits is supported by substantial evidence and to whether the proper legal standard was utilized. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C.A. § 405(g). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. However, "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).

## Issues

1. Whether substantial evidence exists to support the ALJ's RFC and Step 5 determination.

2. Whether the ALJ committed prejudicial legal error by failing to explain why certain medical source opinions were not adopted.

## Analysis

**Whether the ALJ committed prejudicial legal error and whether substantial evidence exists to support the ALJ's RFC and Step 5 determination.**

The crux of Plaintiff's argument presented in both of her issues is premised upon the ALJ's failure to include limitations regarding her ability to maintain a work pace and her

12

absenteeism from work in his RFC assessment. Plaintiff contends that these two limitations were provided by Drs. Lynn and McDonald and thus were considered their medical opinions, obligating the ALJ to explain why he did not adopt these opinions. Plaintiff argues that the ALJ committed prejudicial legal error, requiring remand, by his failure to explain why these medical source opinions were not adopted. Furthermore, because the ALJ did not adopt these opinions, he did not include the limitations when formulating Plaintiff's RFC, therefore the RFC assessment is not supported by substantial evidence. In turn, because the RFC formulation is defective, the hypothetical posed to the VE at the hearing, and upon which the ALJ relied on making his step 5 determination, is not supported by substantial evidence. The Commissioner's decision is therefore unsupported by substantial evidence.

Plaintiff contends that the ALJ committed prejudicial legal error by failing to explain why he did not adopt the medical source opinions of Drs. Lynn and McDonald. (Pl.'s Br. at 9-10.) Specifically, Plaintiff argues that the ALJ violated Social Security Ruling ("SSR") 96-5p which states, in pertinent part, that "[a] medical source's statement about what an individual can still do is medical opinion evidence that an adjudicator must consider . . . when assessing an individual's RFC . . . Adjudicators must weigh medical source statements . . . providing appropriate explanations for accepting or rejecting such opinions." SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996). Additionally, Plaintiff contends that the ALJ violated SSR 96-8p which states, in pertinent part, that "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996). The Court finds Plaintiff's argument misplaced.

13

First, and foremost, the ALJ did consider the medical source opinions of both Drs. Lynn and McDonald and acknowledged their opinions in his Findings. (Tr. 25.) Regarding the opinion of Dr. McDonald, the ALJ stated that Dr. McDonald found Plaintiff had "moderate" difficulties in social functioning and one or two episodes of decompensation, but she could still perform detailed and some complex tasks. (*Id.*) The ALJ went on to explain that he "found no evidence of decompensation lasting for an extended period during the relevant period of time." (*Id.*) Regarding the opinion of Dr. Lynn, the ALJ stated that he agreed with the ME's opinion regarding Plaintiff's reaching limitations, as well as his opinion that Plaintiff should be limited in her interaction with the public. (*Id.*) The ALJ further stated "[i]n sum, the above residual functional capacity assessment is supported by the medical evidence of record and the opinion of Dr. Lynn." (*Id.*)

Plaintiff first argues that Dr. McDonald did not fill out the Mental RFC Assessment form correctly in that he did not explain his section I limitations in section III as instructed on the form. (Pl.'s Br. at 7-8.) Plaintiff is referring to the section I limitation wherein Dr. McDonald checked the box that Plaintiff was "moderately limited" in her "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (Tr. 399.) Plaintiff then contends that this limitation should have been incorporated into Plaintiff's RFC. This Court disagrees.

Dr. McDonald did explain the above section I limitation in section III on the Mental RFC Assessment form when he said she was able to "attend and concentrate for extended periods". (Tr. 400.) Thus, although Dr. McDonald marked that Plaintiff was "moderately limited" in her

attendance and pace at work, he further explained "moderately limited" by stating that she could still "attend and concentrate for extended periods". Additionally, in the Psychiatric Review Technique, Dr. McDonald found Plaintiff only had mild difficulties in maintaining concentration, persistence, or pace with regards to the severity of her bipolar disorder. He noted that Plaintiff's functioning was fairly high and that she was able to attend her appointments and keep up with her medications. Regarding her concentration, Dr. McDonald opined that Plaintiff appeared alert and well-oriented and her memory and concentration were good.

Furthermore, the medical records are replete with evidence indicating that Plaintiff would not have limitations in maintaining a work pace or absenteeism from work. In the consultative psychological examination, Dr. Morris noted that Plaintiff drove herself to the examination, she was on time, and she appeared appropriately dressed and groomed. Plaintiff told the doctor that she visits with friends every day, she handles her own financial affairs, and she is able to perform all of her household chores. Dr. Morris assigned Plaintiff a GAF score of 70, indicating only mild symptoms or some difficulty in occupational functioning, but generally functioning pretty well. *See* AMERICAN PSYCHIATRIC ASS'N, DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. text rev. 2000) (DSM).

Plaintiff fails to even mention any of the records from MHMR where Plaintiff was treated for her bipolar disorder for over three years. Over the course of those three years, the psychiatrist consistently rated Plaintiff's overall level of functioning at a level seven or eight on a scale of zero to ten, with zero being low and ten being high. Furthermore, Plaintiff consistently reported less than moderate bipolar symptoms throughout the course of those three years, frequently indicating no symptoms at all. The MHMR records generally demonstrate that Plaintiff was doing well, her

medications were helping, and she was making good progress. An impairment that can be controlled or remedied by medication or therapy cannot serve as a basis for a finding of disability. *See Johnson v. Bowen,* 864 F.2d 340, 348 (5th Cir. 1988).

Regarding the opinion of the ME, Dr. Lynn, Plaintiff assumes a medical opinion of the ME that is not reflected in the record. At the hearing, Dr. Lynn stated that due to Plaintiff's bipolar disorder, she should be restricted in that she should only have limited interaction with the public. It was Dr. Lynn's medical opinion that this was the only limitation that needed to be incorporated in the RFC, and the ALJ did include such limitation in the RFC. Plaintiff contends that because Dr. Lynn indicated on cross-examination that Plaintiff might find it stressful to keep up with a demanding production pace, that this constituted his medical opinion. Dr. Lynn was merely responding to Plaintiff's counsel's question. He had already expressed his opinion and provided his RFC formulation.

In sum, the Court finds that the ALJ did not violate either SSR 96-5p or SSR 96-8p. The ALJ specifically addressed the medical source opinions of Drs. Lynn and McDonald and he did not reject their opinions thus triggering the explanation requirement in SSR 96-5p. *See* SSR 96-5p at *5. Additionally, the RFC assessment formulated by the ALJ did not conflict with the doctors' opinions so the ALJ was not required to explain why he adopted or rejected their opinions. *See* SSR 96-8p at *7. Hence, the ALJ did not commit prejudicial legal error requiring remand.

Moreover, the Court finds that the ALJ's RFC assessment and Step 5 determination are supported by substantial evidence. A person's RFC is her ability to perform physical and mental work activities on a regular and continuing basis notwithstanding limitations from her impairments. 20 CFR §404.1545. A regular and continuing basis is an eight-hour day, five days a

week, or an equivalent schedule. SSR 96-8p at *2. The ALJ is responsible for determining a claimant's RFC. 20 CFR § 404.1546(c). In assessing the claimant's RFC, the ALJ will consider all medical evidence as well as other evidence provided by the claimant. 20 CFR §404.1545(a)(3). The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir.1988).

The ALJ determined that based on Plaintiff's age, education, work experience, medical conditions, and limitations, she retained the RFC to perform light work in that she could occasionally lift and carry, or push and pull, twenty pounds; frequently lift and carry, or push and pull, ten pounds; stand and walk for six hours in an eight-hour workday; sit as the job requires; occasionally stoop, crouch, bend, climb, kneel, and crawl; and cannot interact with the general public. (Tr. 23.) Based on this RFC and the VE's testimony, the ALJ found that Plaintiff could perform work as a cafeteria attendant, a marker II/labeler, and a final assembler of optical goods.

Plaintiff contends that the ALJ's RFC assessment is not supported by substantial evidence because the ALJ failed to include limitations regarding Plaintiff's ability to maintain a work pace and her absenteeism from work. (Pl.'s Br. at 7.) As outlined above, the medical evidence does not support either of these limitations. Furthermore, Plaintiff did not testify that she would have problems completing a normal workday or workweek. Instead, she testified to being fairly active, in that she drives her car once or twice a day to visit her friends or her grandchild. She testified that she does her own cooking, cleaning, laundry, and grocery shopping. She also testified to attending AA meetings. Plaintiff did mention in her testimony that she didn't handle stress very well, but that she was okay as long as she could work at her own pace. However, subjective complaints must be corroborated by objective medical evidence. *See Chambliss v. Massanari*, 269

F.3d 520, 522 (5th Cir. 2001). Here, the medical evidence simply does not support the inclusion of limitations on Plaintiff's pace and attendance at work into the RFC. Hence, substantial evidence supports the ALJ's RFC formulation. Because the ALJ presented an almost identical RFC in his hypothetical to the VE, the VE's testimony regarding other jobs that Plaintiff could perform is also supported by substantial evidence. The ALJ properly relied on the VE's testimony in making his Step 5 determination that Plaintiff could perform the positions of a cafeteria attendant, a marker II/labeler, and a final assembler of optical goods. The ALJ's decision that Plaintiff is not disabled is supported by substantial evidence.

### Recommendation

For the foregoing reasons, this Court recommends that the District Court AFFIRM the final decision of the Commissioner, as it is supported by substantial evidence and the Commissioner did not commit prejudicial legal error.

SO RECOMMENDED, August 20, 2012.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after service. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after service shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).